### KENNEDY v. BADGETT.

1. Where a mother and five adult children make a division in severalty of an estate, held in trust for them, of which the children have each one-sixth absolutely and the remaining one-sixth in remainder after the death of their mother, who is entitled to it during her life-time, and to the division the mother also contributes property in which she has an absolute estate, such settlement is based upon a valuable consideration, and, moreover, will be sustained as a family arrangement; and by such settlement the trust is discharged.

2. Debts due to an estate by the husbands of devisees cannot be set off against the shares of their wives.

3. A contract made between son and sons-in-law for the support of the mother is binding, and for her board by one of them the others are liable to contribution.

Before WALLACE, J., Laurens, September, 1882.

In this case, the Honorable James S. Cothran, of the Eighth Circuit, sat in the place of the chief justice, who had been of counsel in the cause.

This was an action by Nathaniel O. Kennedy, as executor of Leannah Kennedy, against all the other children of Leannah, and their husbands, and the wife and children of the plaintiff, for a settlement of the estate of the said Leannah. It is unnecessary to add anything to the statement contained in the opinion of this court.

*Messrs Holmes & Simpson,* for appellant.

*Messrs B. W. Ball* and *Ferguson & Young,* contra.

September 13th, 1883.   The opinion of the court was delivered by

MR. JUSTICE COTHRAN.   This matter has been much complicated by an attempt to bring into the settlement of Leannah Kennedy's estate that of Roda Kennedy, also deceased.   If the latter can be eliminated from the case, and we think it can and should be, the matter will be greatly simplified, and the application of the familiar rules of accounting will work out their just and legitimate results.

Many years ago, as far back as the year 1825, Roda Kennedy executed certain deeds of trust, by which his estate, both real and personal, was conveyed to Allen Barksdale, in trust, for the benefit of himself during his life, the same to be equally divided at his death between his wife, Leannah, and her children by him—the share thus given to Leannah to go to their children at her death, "share and share alike."   Roda Kennedy and two of the children departed this life prior to the year 1848, at which time the whole estate (the title to which was in the said trustee, but itself in the possession of the family of Roda Kennedy,) was divided into six equal parts and assigned in severalty to Leannah Kennedy, N. O. Kennedy, James Kennedy, Susan Kennedy (now Badgett), Ellen Kennedy (now Bolt), and Nancy Kennedy (now Franks), who entered into the following covenant:

" We do hereby acknowledge that the above settlement, embracing the estate of Roda Kennedy, deceased, including the property embraced in deeds of trust made to Allen Barksdale, and also the estates of Maria, Samuel B. and John Kennedy, children of Roda Kennedy, who have died intestate since his death, was this day made by and between us, and that we have received the lands, negroes, notes and moneys set forth and specified in said settlement, to the extent of our interest in said estate ; and we do hereby bind ourselves, jointly and severally, and our respective heirs, executors, administrators and assigns, to abide by, perform and fulfill the aforesaid settlement in every respect, and to indemnify and save harmless Allen Barksdale,

the trustee, and each other for any damages, cost and charges that may arise by reason of and on account of said settlement. Witness our hands and seals this fifth day of January, one thousand eight hundred and forty-eight.

(Signed,)        LEANNAH KENNEDY, [L. S.]
              N. O. KENNEDY, [L. S.]
              JAS. P. KENNEDY, [L. S.]
              J. M. FRANKS, [L. S.]
              N. C. FRANKS, [L. S.]
              S. KENNEDY, [L. S.]
              E. KENNEDY, [L. S.]

"Test: SAMUEL BARKSDALE, H. C. YOUNG."

It appears that this arrangement was entered into more than twenty-one years after the date of the trust deeds of Roda Kennedy to Allen Barksdale, and it is safe to assume that the parties to it were all of full age. Into the pool Leannah cast her distributive shares as an heir-at-law in the vested remainders of her children who had died in the meantime, unmarried and intestate, and in these shares, as well as in the slave Hannah and her increase, given to her by the deed of Roda Kennedy, she had an absolute estate. Whether it was from a feeling of impatience on the part of the children to be let into the inheritance, so long delayed, or from whatsoever motive the arrangement was thus solemnly entered into by them, it is needless now to inquire; the act finds just and sufficient support, as well in the valuable contributions made to the pool by Leannah as in the fact of a family settlement amongst themselves, into the precise terms of which, and the motives that induced it, in the absence of fraud, imposition or overreaching, courts of justice are not swift to inquire. * * * But when required to do so, and the same are found fair and reasonable, to save, it may be, family disputes, or for other good cause, "they are upheld with a strong hand, and are binding when in cases between mere strangers the like agreements would not be enforced." *Story Eq. Jur.*, § 132. And it was said by Lord Eldon that, " in family arrangements an equity is administered in equity which is not applied to agreements generally." 1 *Ves. & B.* 30. The arrangement of January 5th, 1848, comes within the operation of these wholesome

2N

rules, and by means of it Allen Barksdale was discharged from the duties of his trust, and the estate of Roda Kennedy lost forever its identity.

As Leannah advanced in years and incompetency, and her children grew in strength and capacity, she gave to them of her personal property from time to time, until finally she gave away all excepting some choses in action against her son, N. O., and her sons-in-law, stipulating only for a maintenance. The property thus given was taken by the children at a valuation agreed upon, and upon condition that in the final disposition of her estate, consisting of a tract of land and the choses in action aforesaid, these gifts should be accounted for with a view to equality.

In 1866, Leannah executed her will by which she gave her entire estate, in equal shares, to her three daughters, Mrs. Franks, Mrs. Badgett and Mrs. Bolt, and to her son, N. O. Kennedy, in trust, for the use of his wife and children. Her son, N. O., and her sons-in-law, were all indebted to her; the first-named in excess of the others. Touching the claims held against N. O., she directed her executor, by the third clause of her will, " to take into the account only so much of those claims as will amount to the principal and interest of the note I hold on my son-in-law, J. M. Franks; the balance of the said claim, I give to my said son, in trust for the benefit of his wife and children, as mentioned in the second clause of my will."

The several claims against her sons-in-law, Franks, Badgett and Bolt, cannot be set-off, as is contended for, against the shares of their wives. *Roberts* v. *Adams*, 2 *S. C.* 337; *Farrow* v. *Farrow*, 12 *Id.* 168. These are assets, whatever may be their value, in the hands of the executor; and so, also, as to the claims against N. O. Kennedy, to an amount equal to the sum due by J. M. Franks upon his note to the testatrix.

Soon after the death of Leannah, which occurred on March 10th, 1876, suit was begun in the Court of Common Pleas, by Susan Badgett and Thomas L., her husband, against N. O. Kennedy, as executor of the will of Leannah, and individually, and all the other defendants here, excepting the children of N. O. Kennedy. The object of that suit was for an accounting amongst the parties for the amounts received by them of the

estate of Roda Kennedy. It ignored the settlement of January 5th, 1848, and sought to go behind it for the purpose of separating the estate which Leannah held absolutely, from that which, under the deeds of Roda Kennedy, she held only for life, and for a sale and division of the same. The case was heard on exceptions to the referee's report, fall term, 1880, by Judge Kershaw, who, in a well-considered decree, announced amongst other things, as his conclusion, that the settlement of January 5th, 1848, excluded the parties from claiming the property then (as now) in controversy, otherwise than as of the estate of Leannah. There was no appeal from his decree. The children of N. O. Kennedy were not parties to that suit.

The points made and most strenuously urged upon the hearing before us are: 1. The matter of *res adjudicata*. 2. The matter of necessary parties; both arising under Judge Kershaw's decree in the case just referred to. In the view which we have taken, the question of *res adjudicata* is not material to the decision of the case, nor is it necessarily involved in its determination. Indeed, technically, one of the unities necessary to support the plea of *res adjudicata* is wanting here, to wit, identity of parties. *Mauldin* v. *Gossett*, 15 *S. C.* 565.

But we concur in the conclusions announced by Judge Kershaw, not upon the ground of *res adjudicata*, but because in our judgment they are correct. Nor does the question as to who were necessary parties to that suit arise, and we are relieved, by finding that there was no subsisting trust after the settlement of January 5th, 1848, from considering the nice distinction between an action brought in opposition to the trust, and one brought in furtherance of it, to enforce its provisions; the former requiring the presence of the beneficiaries, the latter not.

The master, adopting the referee's report in the former case, has found that, in the various gifts of property made by Leannah to her children, in the years 1848, 1856 and 1860, inequalities exist. In other words, assuming $6,621.17 to be the amount of a share, not of " the trust estate," as it is styled by the referee, but of the whole estate as found in the hands of Leannah at the settlement of January 5th, 1848, Mrs. Badgett, Mrs. Franks and Mrs. Bolt each received less than said sum, and that N. O. Ken-

nedy received more.   These deficiencies are not debts due to the daughters, but, after the debts of Leannah shall have been paid, these amounts must be taken into account in the final distribution of her estate for the purpose of equalizing the shares of the parties interested.

As the case must go back to the master, it will be proper to recur, in revising the accounting, to the item of $280 disallowed to J. M. Franks for the board of Leannah.   There is no legal obligation upon children to support their parents, but it has always been considered a high moral duty; and in this case it was the subject of contract, supported by the final division of the mother's property amongst the children.   As such, the matter referred to is a proper charge, and if no others of the same kind exist, contribution should be made to J. M. Franks by the other children, under the agreement made between them to maintain Leannah.   If it should be found that others of them have also borne the burden of her support, compensation to them in like manner should be made on proper proof.

The report of the master was confirmed by Judge Wallace; and it is the judgment of this court that his order confirming said report be modified as herein indicated, and that the case be remanded to the Circuit Court for such orders as are necessary to carry out the conclusions herein stated.

NOTE.—Hon. Thomas J. Mackey was the Circuit judge in the case of *McDaniel* v. *Anderson*, *ante*, *p*. 211.   It was an appeal from Pickens county, where it was heard in September, 1880.   These matters were inadvertently omitted in the report of the case.—REPORTER.